■ DOMINGO DE PEÑA, as Administrator of the Estate of JESUS DE PENA, Deceased, et al., Respondents, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [653 NYS2d 327] —Order, Supreme Court, New York County (Robert D. Lippmann, J.), entered June 6, 1995, insofar as it denied defendant's cross motion for summary judgment dismissing the complaint, unanimously reversed, on the law, the cross motion is granted, and the complaint dismissed, without costs.

On a June evening in 1991, plaintiff de Peña's decedent, along with plaintiff Berrios and three other boys, all 13 years of age, embarked upon an excursion to view a large graffiti mural located in a subway tunnel about midway between the 190th and 200th (Dyckman) Street stations on Manhattan's upper West Side. At least some of the boys had visited this spot in the past, gaining access through an inadequately secured emergency doorway exiting into Fort Tryon Park. This time they took the A train down to 190th Street, walked to the north end of the platform, and then proceeded into the darkened tunnel along the catwalk beside the tracks. Their goal was a point about 1,000 feet inside the tunnel. When they saw a southbound train approaching, four of the boys (including the decedent and Berrios) jumped down from the catwalk and crossed the tracks to the uptown side, to avoid detection by the motorman. Shortly thereafter, as a northbound train approached from behind them, they crossed back over to the downtown side, again to avoid detection by the motorman. This time, instead of climbing back onto the catwalk and rejoining their fifth companion, they started walking along the tracks and balancing atop the protective wooden covering of the southbound electrified third rail. At about 8:15 P.M., plaintiff de Peña's decedent slipped and was electrocuted. Plaintiff Berrios was injured trying to assist him.

In denying defendant's motion for summary judgment, the nisi prius court held that there were questions of fact as to whether these 13 year olds had the maturity, experience and judgment to appreciate the peril of their actions, and whether defendant had taken reasonable precautions to prevent such foreseeable injury. We disagree. The recklessness of this activity should have been so obvious, even to City lads of such tender age, that the case should have been dismissed before trial. As we held in *Tillmon v New York City Hous. Auth.* (203 AD2d 19), compensation should not be granted where the proximate cause of death or injury is an individual's own willful behavior in engaging in hazardous and illegal conduct (in that case, "elevator surfing" by a 13 year old). The subway system, though necessary to the lifeblood and commerce of this City, includes areas that are so obviously fraught with danger for the general public that a trespass into such areas, as here, makes the case one of those instances where a solitary conclusion may be drawn from the given set of facts, and where the question of legal causation may be decided as a matter of law (*Wright v New York City Tr. Auth.*, 221 AD2d 431, *lv denied* 88 NY2d 806).

The common law doctrine of "attractive nuisance," which protects infant trespassers or intermeddlers who may be enticed into harm's way, might have applied here had the boys gained entrance to the subway tunnel through the poorly secured doorway in Fort Tryon Park (*see, Scurti v City of New York*, 40 NY2d 433), but that was not the case on this occasion. Regardless of warnings that may or may not have been posted on the subway platform (which would have been superfluous, in any event, where risk and danger are obvious as a matter of common sense [*Smith v Stark*, 67 NY2d 693]), to hold that these boys—clearly no strangers to the subway system—were not aware of the extreme hazard in entering a darkened tunnel from the platform, proceeding on a 1,000-foot excursion along the catwalk, twice crossing over the tracks in advance of an approaching train, and then tightroping on the protective covering atop the third rail, would be to ignore the realities of life in this City. Furthermore, their cavalier and reckless courting of danger demonstrates that no amount of fencing at the end of the platform would have deterred them from this misadventure.

Motion, insofar as it seeks leave to appeal to the Court of Appeals denied, and insofar as it seeks reargument, granted to the extent of recalling and vacating this Court's unpublished decision and order (Appeal No. 59051) entered on November

12, 1996, and substituting therefor a new decision and order, decided simultaneously herewith. Concur—Sullivan, J. P., Rosenberger, Ellerin, Wallach and Rubin, JJ.